**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| LAUREN WOLF-BOND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHARKNINJA OPERATING LLC,<br><br>Defendant. | ) | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Lauren Wolf-Bond ("**Plaintiff**", "**Ms. Wolf-Bond**"), individually and on behalf of all others similarly situated, brings forth this class action against Defendant, SharkNinja Operating LLC ("**SharkNinja**" or "**Defendant**") and alleges on personal knowledge, investigation of counsel, and information and belief as follows:

## I. INTRODUCTION

1. This class action is brought for the benefit and protection of Plaintiff and all similarly situated consumers against SharkNinja's deceptive marketing, distribution, and sale of the dangerous and defective pressure cookers that pose a serious risk of burn injuries to ordinary families.

2. SharkNinja, the self-proclaimed "people who built a consumer problem[-]solving engine"[1], issued a grossly deficient recall that fails to remedy critical safety defects and improperly transfers liability and burden onto consumers.

---

[1] *See*, https://sharkninja.com/ (last accessed: May 8, 2025).

3. This is a nationwide class action brought by Plaintiff, on behalf of herself and all similarly situated consumers, who purchased all Ninja Foodi OP300 Series Multi-Function Pressure Cookers[2] (collectively referred to herein as "**Defective Product(s)**" or "**Pressure Cookers(s)**") for personal or household use -and not for resale- during the fullest period allowed by law ("**Class**" or "**Class Members**"). Approximately 1,846,400 units have been sold.[3]

4. The hazard pertains to the pressure-cooking lid, which can be opened during use, "causing hot contents to escape, posing a risk of burn injuries to consumers" ("**Defect**").

## II. PARTIES

5. Plaintiff, Lauren Wolf-Bond, is and was at all times relevant to this matter a resident of the State of California, residing in San Diego. Plaintiff is a citizen of California.

6. Plaintiff purchased a Defective Product, Model Number OP300-I07, that is included within the Recall.

7. Defendant, SharkNinja Operating LLC is a limited liability company organized under the laws of Massachusetts, with its principal place of business at Needham, Massachusetts located at 89 A St, Ste 100, Needham, MA, 02494-2806. At all relevant times hereto, Defendant designed, built, marketed, distributed, promoted and/or marketed, and sold the Defective Product nationwide, including in California.

---

[2] As set forth by SharkNinja, the defective product recalled include: all Ninja Foodi OP300 Series Multi-Function Pressure Cookers, sold in black, with a 6.5-quart capacity; "Ninja" printed on the front of each unit and on the product label; and include the following model numbers: OP300, OP301, OP301A, OP302, OP302BRN, OP302HCN, OP302HAQ, OP302HW, OP302HB, OP305, OP305CO and OP350CO. Additionally, any OP300 series replacement pressure cooker lids purchased as an additional part is also included in the recall. *See*, https://www.cpsc.gov/Recalls/2025/SharkNinja-Recalls-1-8-Million-Foodi-Multi-Function-Pressure-Cookers-Due-to-Burn-Hazard-Serious-Burn-Injuries-Reported (last accessed May 8, 2025).

[3] Id.

## III. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because (i) the proposed Class includes at least 100 members, (ii) minimal diversity exists, as at least one Plaintiff is a citizen of a state different from that of Defendant; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over Defendant because it regularly conducts substantial business in this District, is headquartered or maintains its principal place of business in this District, and has sufficient minimum contacts with this State. Moreover, the claims in this Complaint arise from Defendant's conduct within this District. Defendant has been afforded due process, as it has—at all relevant times—conducted business in Massachusetts, either directly or through its agents, subsidiaries, officers, or representatives. This includes marketing, advertising, distributing, and/or selling the Defective Products, committing statutory violations in the state, and causing injuries to Plaintiff and the putative Class arising from acts and omissions that occurred in Massachusetts during the relevant period.

10. Venue is proper in this District under 28 U.S.C. §1391(b)(1) because Defendant resides in this District. Venue is also proper under 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in Massachusetts. Also, venue is proper under 28 U.S.C. §1391(c) because Defendant conducts substantial business in this District, maintains sufficient minimum contacts, and otherwise purposefully availed itself of this forum by promoting, marketing, and selling the Products in this District.

## IV. COMMON FACTUAL ALLEGATIONS

11. Defendant designs, markets, distributes, and sells all Ninja Foodi OP300 Series Multi-Function Pressure Cookers, with functions that include pressure cooking and air frying.

12. The home appliance market is highly competitive, and as a sophisticated industry leader, Defendant knows and accounts for this. Capitalizing on this, Defendant alleges they make "innovative 5-star products that improve people's lives, every day".[4]

13. As such, Defendant aggressively sold and marketed the Pressure Cookers through nationwide stores such as Walmart, Costco, Sam's Club, Amazon, and Target, and online at www.Ninjakitchen.com, www.walmart.com, www.costco.com, www.samsclub.com, www.amazon.com, and www.target.com; from January 2019 through March 2025.[5]

14. Defendant profited from the Defective Product, as it sold nationwide for approximately $200 per unit.[6]

15. The Defective Product was marketed to and purchased by everyday consumers for home use, where safety should be paramount. Yet Defendant failed in its basic duty to ensure their products were hazard-free and safe for their intended use - cooking.

16. Since its founding in 1994, Defendant has gained the trust of consumers, who reasonably relied on their products' quality and safety, including the Defective Product at issue. Defendant prides itself in their portfolio of *trusted*, global, billion-dollar brands.[7]

17. Additionally, as a seller of consumer household appliances, Defendant has a continuing duty to ensure that its products are free from dangerous defects, including through

---

[4] *See*, https://sharkninja.com/ (last accessed: May 8, 2025).
[5] *See*, https://www.cpsc.gov/Recalls/2025/SharkNinja-Recalls-1-8-Million-Foodi-Multi-Function-Pressure-Cookers-Due-to-Burn-Hazard-Serious-Burn-Injuries-Reported (last accessed May 8, 2025).
[6] Id.
[7] *See*, https://sharkninja.com/our-company (last accessed: May 8, 2025).

regular testing--especially before injecting the products into the stream of commerce for consumers to cook and air fry.

18. Defendant represents to consumers that their products – including the Pressure Cooker – are designed "to meet our quality standards for performance and durability".[8] They allege to deliver a "5-star quality product experience"[9]

19. Nevertheless, on May 1, 2025, Defendant issued a recall for the 1,846,400 units sold of the Pressure Cooker, Recall No. 25-247 ("**Recall**"). The Recall was prompted by "106 reports of burn injuries, including more than 50 reports of second- or third-degree burns to the face or body".[10]

20. Based on information and belief, the Defendant knew or should have known about the Defect based on pre-market testing, quality assurance protocols, consumer complaints, warranty claims, and/or internal engineering analyses before placing the Defective Product into the stream of commerce. After all, Defendant represents they are "consumer-centric innovation driven by [their] *relentless pursuit of perfection*", having over 800 cross-functional engineers and designers solving consumer problems.[11]

21. Despite this knowledge, the Defendant failed to disclose the existence of the Defect to consumers at the time of purchase.

22. Defendant's engineering, product development, quality control, and executive teams had access to data and testing results that revealed or would have revealed the Defect long

---

[8] *See*, https://sharkninja.com/ (last accessed: May 8, 2025).
[9] *See,* https://sharkninja.com/our-company (last accessed: May 8, 2025).
[10] *See*, https://www.cpsc.gov/Recalls/2025/SharkNinja-Recalls-1-8-Million-Foodi-Multi-Function-Pressure-Cookers-Due-to-Burn-Hazard-Serious-Burn-Injuries-Reported (last accessed May 8, 2025).
[11] *See*, https://sharkninja.com/innovation (last accessed: May 8, 2025).

before the recall was issued. Yet, Defendant concealed this information while continuing to market and sell the Defective Product.

23. As stated by the United States Consumer Product Safety Commission ("US-CPSC"), the Hazard is caused by the pressure cooker's lid being opened during use.[12] This allows the hot contents to escape, posing a risk of serious burn injuries, as reported by consumers.[13]

24. As stated in the Pressure Cooker's Owner's Guide, the lid lock is a safety measure designed not to unlock until pressure is released.[14]

25. In Defendant's Recall Notice, consumers were advised that the Recall involved all the Ninja Foodi OP300 Series Multi-Function Pressure Cookers, including any OP300 series replacement pressure cooker lids purchased as an additional part.[15]

26. Defendant's Recall Notice only provided a repair remedy and recommended that consumers immediately stop using the product's pressure-cooking function and contact SharkNinja for a free replacement lid.[16]

27. Having the only remedy of replacement part is insufficient, as it does not account for (i) the price substantial devaluation of the product, (ii) the product cannot be used for the purpose it was intended, and (iii) it provides a serious health and safety risk for anyone operating it for its intended use.

28. Moreover, the Defect is latent and not something a consumer could discover through an ordinary inspection or by exercising reasonable diligence at the time of purchase. No

---

[12] *See*, https://www.cpsc.gov/Recalls/2025/SharkNinja-Recalls-1-8-Million-Foodi-Multi-Function-Pressure-Cookers-Due-to-Burn-Hazard-Serious-Burn-Injuries-Reported (last accessed May 8, 2025).
[13] Id.
[14] *See*, Owner's Guide, p. 15, https://support.ninjakitchen.com/hc/en-us/article_attachments/19662100993820 (last accessed May 8, 2025).
[15] *See*, Recall Notice, https://www.rqa-inc.com/client/SharkNinja/ (last accessed May 8, 2025).
[16] Id.

reasonable consumer would expect to purchase a Pressure Cooker with such a significant safety defect. Especially when even the Owner's Guide provided by Defendant says the lid will not open when cooking as a safety measure.

29. As a direct result of Defendant's misrepresentations, omissions, and misconduct stated in detail below, Plaintiff and the putative Class Members have suffered injury in fact, including economic damages.

30. SharkNinja is an industry-leading manufacturer and seller of home appliances. As such, it markets itself to consumers as "consumer- centric innovation driven by our relentless pursuit of perfection" with "market leading performance, quality, and value".[17] Nevertheless, it introduced a dangerous and unsafe Pressure Cooker into the marketplace without adequate testing or screening, which is detrimental to Plaintiff and all reasonable consumers.

31. Because the Defect existed at the time of purchase and was inherently undiscoverable by a reasonable consumer, the Defective Product failed to conform to Defendant's express and implied promises, as conveyed through its marketing, representations, and omissions.

32. Plaintiff and reasonable consumers paid a price premium for the Defective Product based on the expectation that it would be safe and function as intended—an expectation defeated by the undisclosed defect.

33. The design and manufacturing of the Defective Product, including knowledge of potential defects and safety risks, was exclusively within Defendant's control. As the designer, manufacturer, and seller of the Defective Product, Defendant had exclusive and superior knowledge about the Pressure Cooker's components, design specifications, manufacturing

---

[17] *See*, https://sharkninja.com/innovation (last accessed: May 8, 2025).

processes, quality control procedures, and potential failure modes that ordinary consumers could not possibly possess.

34. Evidence of Defendant's knowledge of the Defect prior to the recall includes, but is not limited to:

a. Results from Defendant's internal testing and quality control procedures;

b. Engineering and design documents showing the Pressure Cooker specifications and tolerances;

c. Industry standards and regulatory guidelines applicable to a pressure cooker;

d. Consumer complaints made directly to Defendant about the Defect before the recall;

e. Warranty claims submitted to Defendant regarding the Defect;

f. Defendant's engineering analyses and risk assessments; and

g. Documented knowledge of similar defects in comparable products within the industry.

35. Despite having exclusive and superior knowledge of the Defect, Defendant did not disclose this material information to consumers at the point of sale or in any marketing materials, packaging, labels, or accompanying documentation.

36. Moreover, the Defective Product contains a dangerous and potentially life-threatening Defect that puts consumers at serious risk of second- and third-degree burns. Defendant knew about this defect before selling the products to unsuspecting families and actively concealed it from the public.

37. Evidence of Defendant's prior knowledge is substantial. By the time the Recall was issued, Defendant had received at least 106 documented reports of incidents in which consumers

had experienced burn injuries, including more than 50 reports of second- and third-degree burns to the face and body, with 26 lawsuits filed.[18] These were not isolated incidents but clear evidence of a widespread, systematic defect.

38. The timing, scope, and nature of the Recall itself is evidence of Defendant's prior knowledge of the Hazard. Industry standards and regulatory requirements mandate that manufacturers monitor their products for safety issues and promptly report potential defects. The significant lag between when the Defective Product was first sold by January 2019 and when the recall was issued May 1, 2025, a period of more than 6 years, suggests that Defendant deliberately delayed addressing known safety issues to maximize profits.

39. Defendant's recall notice carefully avoids admitting when the company first discovered the defect, using passive language to obscure its prior knowledge and responsibility.

40. The Defect manifests from a common cause related to the design, materials, and/or manufacture of the Defective Product, which would have been known to Defendant through proper testing and quality assurance protocols.

41. The Defect renders the Pressure Cooker unfit for its ordinary and intended use—pressure cooking.

42. The Defendant failed to adequately inspect and test the Defective Products to ensure they were free from serious safety defects before placing them on the market. Alternatively, proper testing would have revealed the Defect—information the Defendant knowingly concealed from consumers.

---

[18] *See*, https://www.cpsc.gov/Recalls/2025/SharkNinja-Recalls-1-8-Million-Foodi-Multi-Function-Pressure-Cookers-Due-to-Burn-Hazard-Serious-Burn-Injuries-Reported (last accessed May 8, 2025).

43. Moreover, in its Recall Notice, Defendant does not disclose if and when the products were inspected, how many, the specific inspections or procedures used, or the results of any safety inspection conducted before releasing the Defective Product to the market or to say the product was safe to use in its air-fryer capacity.[19]

44. This lack of transparency prevents consumers from fully understanding the scope of the defect and the potential risks associated with further use of the Defective Product. Therefore, the Defective Product is worthless because it cannot be used without risk of serious injury because it contains a known uniform Defect.

45. Additionally, as stated in the Recall Notice, the only choice Defendant offers to Plaintiff and Class Members is to participate in the recall by filling out a form to order a replacement pressure-cooking lid, placing additional burdens on the consumer.[20]

46. While the Recall Notice states that the 'other functions' of the Defective Product may be used while awaiting the replacement lid, the previously discussed lack of transparency and absence of concrete safety assurances render the product unfit for continued use.

47. As a result, Plaintiff and the Class Members have suffered economic harm, as they either would not have purchased the Defective Product or would have paid significantly less had they known the truth. Plaintiff and the Class therefore seek compensation for the economic damages caused by Defendant's unfair, deceptive, fraudulent, and unlawful conduct. Given the widespread distribution and sale of the Defective Product across the country, a class action is the most efficient and appropriate means to hold Defendant accountable and to obtain meaningful relief for the affected consumers.

---

[19] *See*, Recall Notice, https://www.rqa-inc.com/client/SharkNinja/ (last accessed May 8, 2025).
[20] Id.

## V. PLAINTIFF'S EXPERIENCES WITH THE DEFECTIVE PRODUCT

48. Plaintiff Wolf-Bond is a resident and citizen of California.

49. Plaintiff purchased the Defective Product on May 15, 2021 online for approximately $159.00.

50. Plaintiff purchased the Ninja Foodi Pressure Cooker, Model No. OP300-I07, a Defective Product included in the Recall and one of the objects of this litigation.

51. When purchasing Defendant's Pressure Cooker, Plaintiff relied on Defendant's (i) omissions, (ii) misrepresentations; and (iii) alleged quality and safety assurances.

52. Once Plaintiff learned about the Recall, she stopped using the Pressure Cooker because it contained the Defect and possessed a risk of second- or third-degree burns to her face and body, rendering it unsafe to use. Accordingly, the Defective Product is unusable, worthless, and has no value.

53. Had Plaintiff Wolf-Bond and the Class Members known of, or been adequately informed about, the defect in the Pressure Cooker, they would not have purchased the product or, at a minimum, would have paid significantly less for it. Defendant's omission of this material safety hazard led Plaintiff and Class Members to pay a price premium for the Pressure Cooker—an amount they would not have paid had the truth been disclosed.

54. As a result of Defendant's conduct, Plaintiff Wolf-Bond and Class Members have suffered economic damages because the Pressure Cookers purchased are now worthless or worth much less than what they paid due to the Defect.

## VI. ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

55. Plaintiff and the members of the Class had no way of knowing about Defendant's conduct concerning the safety risks associated with the use of the Defective Product.

56. The Defect was not discoverable by Plaintiff and Class Members at the time of purchase through the exercise of reasonable diligence for the following reasons:

a. The Defect involves internal mechanisms that are not visible during normal inspection or use;

b. The Defect is latent and typically only manifests if product is used for pressurized cooking;

c. The Defective Product was 6 years in the market without any indication or notice from Defendants of a safety concern or issue;

d. Consumers, such as Plaintiff and the Class Members, lack the technical expertise, specialized testing equipment, and engineering knowledge necessary to identify the Defect;

e. Defendant's marketing materials, product packaging, owner's guide, and other consumer-facing materials contained no warnings or disclosures about the Defect; and

f. The manifestation of the Defect could reasonably be attributed to other causes or normal wear and tear rather than a product defect.

57. Prior to the Recall, neither Plaintiff nor any member of the Class could have reasonably discovered Defendant's misconduct through the exercise of due diligence. Plaintiff and Class Members were not aware of, and had no reason to suspect, the existence of the defect or the deceptive conduct alleged herein. Accordingly, the applicable statutes of limitation have been tolled under the discovery rule with respect to all claims asserted by Plaintiff and the Class.

58. Further, by failing to provide notice of the risks of malfunction or injury associated with the continued use of the Defective Product, Defendant concealed its conduct and the existence of the claims asserted herein from Plaintiff and the Class members.

59. Defendant, as the designer, manufacturer, and seller of the Pressure Cooker, was in a superior position of knowledge regarding the Defect and had a duty to disclose such material safety information to consumers.

60. Upon information and belief, Defendant intentionally engaged in conduct designed to conceal the existence of the defect and related claims from Plaintiff and Class Members. Plaintiff and Class Members remained unaware of the facts alleged herein through no fault of their own and despite the exercise of reasonable diligence. As a result, any statute of limitations that otherwise may apply to the claims of Plaintiff or Class members should be tolled.

61. Defendant's affirmative acts of concealment, including its continued marketing of the Defective Product as safe, reliable, and fit for their intended purpose while possessing knowledge of the Defect, further support estoppel and tolling of any applicable limitations period.

62. As a factual matter, Plaintiff did not learn about the Defect alleged herein, and any injury risks until just prior to filing suit. Once Plaintiff learned of it, she promptly acted to preserve her rights, filing this action. Defendant is therefore estopped from asserting any statute of limitation defense that might otherwise apply to the claims asserted herein.

## VII. CLASS ACTION ALLEGATIONS

63. Plaintiff brings this action on behalf of herself and the following Class under Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. Specifically, the Class is defined as:

> **National Class:** All persons in the United States who purchased the Defective Product for personal use and not for resale during the maximum period allowable by law.

64. Additionally, Plaintiff brings this action on behalf of herself and the following Subclass:

> **California Subclass**: All persons in the State of California who purchased the Defective Product for personal use and not for resale during the maximum period allowable by law.

65. Excluded from the Class are: (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of Defendant or any entity in which Defendant has a controlling interest; (b) any legal counsel or employee of legal counsel for the Defendant; (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members; and (d) any person who has previously settled claims related to the Hazard with Defendant.

66. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

67. **Numerosity**. Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains currently unknown, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Class may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

68. **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the Defective Product contains the Defect alleged herein;

b. Whether Defendant failed to appropriately warn Plaintiff and the Class of the damage or injury that could result from the use of the Pressure Cooker;

c. Whether Defendant failed to disclose to Plaintiff and the Class that the Pressure Cooker carries with it the risk of suffering second or third-degree burns on the face or body when lid opens or comes loose during pressurized cooking;

d. Whether Defendant had actual or imputed knowledge of the Defect but did not disclose it to Plaintiff and the Class at the time of sale;

e. Whether the Defect was present in the Pressure Cooker at the time they left Defendant's possession or control;

f. Whether a reasonable consumer could have discovered the Defect before experiencing the burns on their face or body due to lid coming off;

g. Whether Defendant had exclusive and superior knowledge about the Hazard before making the Defective Product available for sale;

h. When Defendant first discovered, knew, or should have known about the Defect;

i. Whether Defendant had a duty to disclose the Defect to consumers;

j. Whether Defendant promoted the Defective Product with false or misleading statements of fact and material omissions;

k. Whether Defendant's marketing, advertising, packaging, labeling, and/or other promotional materials for the Defective Product are deceptive, unfair, or misleading;

l. Whether Defendant's actions and omissions violate California Consumer Legal Remedies Act.

m. Whether Defendant's representations are deceptive;

n. Whether Defendant engaged in unfair or deceptive trade practices;

o. Whether Defendant violated the state consumer protection statutes alleged herein;

p. Whether Defendant's conduct violates public policy;

q. Whether Plaintiff and putative members of the Class have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

r. Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with selling the Defective Product;

s. Whether Plaintiff and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief; and

t. Whether Plaintiff and members of the putative Class are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

69. **Typicality.** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff and the Class Members each purchased and used the Defective Products, and each sustained damages arising from Defendant's wrongful conduct, as disclosed herein. Plaintiff shares the aforementioned facts and legal claims or questions with the putative Class Members. Plaintiff and all members of the putative Class have been similarly affected by Defendant's common misconduct alleged herein. Plaintiff and all members of the putative Class sustained monetary and

economic injuries including—but not limited to—ascertainable losses resulting from Defendant's deceptive omissions concerning the safety of the Defective Product and its ability, as well as the proposed repair remedy's ability, to function as intended for pressurized cooking.

70. **Adequacy**. Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiff has retained counsel with substantial experience in handling complex, class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of putative Class.

71. **Insufficiency of Separate Actions**. Absent a class action, Plaintiff and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

72. **Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Class Members, thereby injunctive relief as described below is appropriate, concerning the members of the Class as a whole.

73. **Superiority**. A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d. Individual joinder of all members of the Class is impracticable;

e. Absent a Class, Plaintiff and members of the putative Class will continue to suffer harm as a result of Defendant's unlawful conduct; and

f. This action presents no manageability concerns that would impede its treatment as a class action and, in fact, is the most appropriate and efficient method by which Plaintiff and the members of the putative Class can obtain redress for the harm caused by Defendant's misconduct.

74. In the alternative, the Class may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Defendant;

b. Adjudications of claims of the individual members of the Class against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may

substantially impair or impede the ability of other putative Class Members to protect their interests; and

c. Defendant has acted or refused to act on grounds generally applicable to the members of the putative Class, thereby making appropriate final and injunctive relief concerning the putative Class as a whole.

75. In the alternative to those claims seeking remedies at law, Plaintiff and Class Members allege that no plain, adequate, and complete remedy exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937).

## VIII. CLAIMS FOR RELIEF

### COUNT I
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Plaintiff and the Nationwide Class)

76. Plaintiff hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

77. Plaintiff's individual claims are brought under the laws of the State in which she purchased her Defective Product, California. The claims of absent members of the Nationwide Class are brought under the state's laws in which they purchased their Defective Product.

78. California has adopted UCC § 2-314, which states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." See Cal. Comm. Code § 2314. Specifically, under Cal. Comm. Code § 2314(2), the implied warranty of merchantable requires that products, "[p]ass without objection in the trade under the contract description," "[i]n the case of fungible goods, are of fair average

quality within the description" and "[c]onform to the promises or affirmations of fact made on the container or label if any." Accordingly, Plaintiff brings this action for violation of Cal. Comm. Code § 2314(2)(a), (b), and (f).

79. Defendant manufactured and distributed the Defective Products for sale to Plaintiff and the Class Members.

80. Defendant impliedly warranted to Plaintiff and Class members that their Pressure Cooker was free of defects and was merchantable and fit for their ordinary purpose for which such goods are used.

81. Defendant breached the implied warranty of merchantability because the Pressure Cookers suffer from the Defect, and thus, defective, unmerchantable, and unfit for their ordinary, intended purpose.

82. The Defect existed at the time the Defective Product left Defendant's control and was sold to Plaintiff and Class Members. This defect creates an unreasonable risk of injury, renders the Pressure Cooker unsafe for their intended use, and substantially impairs its value and utility.

83. Had Plaintiff and Class Members known about the Defect and the safety risks it posed, they would not have purchased the Defective Product or would have paid substantially less for them. Defendant's concealment of the Defect at the time of sale renders the Pressure Cooker unfit for its ordinary use.

84. Plaintiff did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiff and Class members

were injured in an amount to be proven at trial, but not less than the full purchase price of the Pressure Cooker.

**COUNT II**
**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of Plaintiff and the California Subclass)**

85. Plaintiff hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

86. Plaintiff Wolf-Bond brings this count on behalf of herself and the proposed Class.

87. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

88. Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Defective Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continues to violate, the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

89. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

90. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

91. Defendant engaged in unfair and/or deceptive conduct by making material representations and omissions regarding the safety and utility of the, and the suggested repair. The Pressure Cooker contains the Hazard alleged herein, and Plaintiff and Class Members cannot safely use Defendant's product as advertised and represented by Defendant.

92. Defendant's conduct described throughout this brief, including Defendant's inadequate testing before placing into the stream of commerce, is unfair to consumers and the public at large.

93. Given Defendant's longstanding position in the industry as a leader in home appliances, Plaintiff and reasonable consumers trusted and relied upon Defendant's representations and omissions that they would receive a safe, working Pressure Cooker; and not second- or third-degree burns.

94. As a result of Defendant's violations to the CLRA by use or employment of unfair or deceptive acts or business practices, Plaintiff and the Class Members suffered ascertainable losses of money caused by Defendant's representations and material omissions regarding the ability of the Pressure Cooker to function as intended.

95. Had they been aware of the true- dangerous- nature of the Defective Product, Plaintiff and Class Members would have paid less for the Defective Product, if at all.

96. Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Class Members are entitled to relief, including restitution, under California Civil Code § 1780.

They are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

97. Contemporaneously with the filing of this Complaint, Plaintiff sent Defendant a notice letter advising it of its violations under the CLRA, and providing Defendant a 30-day window in which to cure violations, reserving the right to bring claims for monetary, actual, and treble damages as well as other relief should those violations not be cured.

**COUNT III**
**UNJUST ENRICHMENT/QUASI-CONTRACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

98. Plaintiff hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

99. Plaintiff Wolf-Bond brings this count on behalf of herself and the proposed Nationwide Class.

100. Plaintiff and the putative Class Members conferred a benefit on Defendant by purchasing the Defective Product—payments that Defendant knowingly accepted while aware of the product's defect and unfitness for its intended use.

101. Defendant either knew or should have known that the payments rendered by Plaintiff and Class were given with the expectation that the Pressure Cooker would have the qualities, characteristics, and suitability for the use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

102. By its wrongful acts and omissions described herein, including selling the Defective Product, which contain both a Defect and was inoperative for the intended use, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

103. Defendant's wrongful conduct directly caused Plaintiff's detriment and resulted in Defendant's unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this Complaint.

104. Defendant has unjustly profited from its unlawful, unfair, and deceptive conduct at the expense of Plaintiff and the putative Class Members. It would be inequitable and contrary to principles of justice for Defendant to retain the profits, benefits, and other compensation obtained through the sale of the Defective Product, as such enrichment was directly tied to the misconduct alleged herein.

105. Defendant was unjustly enriched by retaining revenues from Class Members' purchases of the Defective Product. Such enrichment is unjust and inequitable because Defendant knowingly manufactured, marketed, and sold defective and dangerous Defective Product while omitting material facts, causing Plaintiff and Class Members to purchase products they otherwise would not have bought had the truth been disclosed.

106. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the putative Class Members suffered economic harm, as they would not have purchased the Defective Product on the same terms or at the same price had they known the true nature and characteristics of the Defective Product.

107. Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant. Thus, as a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

**COUNT IV**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(On Behalf of Plaintiff and the California Subclass)**

108. Plaintiff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

109. Plaintiff brings this Count on behalf of herself and the California Subclass.

110. Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful [or] unfair … business practices and unfair, deceptive, untrue or misleading advertising …."

111. Defendant's marketing and labeling of the Defective Products is false and misleading, and its omission of the Defect is false and misleading to reasonable consumers, including Plaintiff. As discussed above, Defendant's representations concerning the safety and qualities of the Defective Products are false and misleading due to the Defect. Further, because of the Defect, the Products cannot be used for their principal or intended purpose and are effectively worthless. The Products are unreasonably dangerous products that are unfit for use or sale.

112. Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating the CLRA, the FAL and other applicable law as described herein.

113. Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers. Selling the Defective Products in a manner that makes them inherently dangerous is of no benefit to consumers. Defendant's sale of the Products with the Defect causes a threat to public health, safety, and

morality. Consumers are unwittingly purchasing and using the Products without knowing that they are ineffective and inherently dangerous, which in no way provides any benefit to consumers.

114. Plaintiff and the California Subclass acted reasonably when they purchased the Products based on their belief that Defendant's representations were not misleading, true and lawful.

115. Plaintiff and the California Subclass lack an adequate remedy at law for the same reasons alleged above.

116. Plaintiff and the California Class suffered injuries caused by Defendant because (a) they would not have purchased the Defective Products absent Defendant's misrepresentations and omissions; (b) they would not have purchased the Products on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for the Defective Products due to Defendant's misrepresentations and omissions; and (d) the Products did not have the characteristics, benefits, or quantities as promised.

**COUNT V**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**
**California Business & Professions Code §§ 17500, *et. seq.* ("FAL")**
**(On Behalf of Plaintiff and the California Subclass)**

117. Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

118. Plaintiff brings this Count on behalf of herself and the California Subclass.

119. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading

and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

120. Defendant engaged in a scheme of offering mislabeled Defective Products for sale to Plaintiff and the California Subclass members by way of product packaging, labeling, and other promotional materials. These materials misrepresented and/or omitted the true content and nature of the Defective Products. Defendant's advertisements, labeling, and inducements come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq.* in that the product packaging, labeling, and promotional materials were intended as inducements to purchase the Defective Products, and are statements disseminated by Defendant to Plaintiff and Class members. Defendant knew, or reasonably should have known, that these statements were unauthorized, inaccurate, and misleading.

121. Defendant's marketing and labeling of the Defective Products is false and misleading, and its omission of the Defect is false and misleading to reasonable consumers, including Plaintiff. As discussed above, Defendant's representations concerning the safety and qualities of the Defective Products are false and misleading due to the Defect. Further, because of the Defect, the Defective Products cannot be used for their principal or intended purpose, and are effectively worthless. The Defective Products are unreasonably dangerous products that are unfit for consumption or sale.

122. Defendant knew or should have known, through the exercise of reasonable care that its representations and omissions were false and misleading and that the Defect caused the Defective Products to be unreasonably dangerous products that are unfit for use or sale.

123. Plaintiff lacks an adequate remedy at law for the same reasons alleged above.

124. Plaintiff and the Class suffered injuries caused by Defendant because (a) they would not have purchased the Defective Products absent Defendant's misrepresentations and omissions; (b) they would not have purchased the Defective Products on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for the Defective Products due to Defendant's misrepresentations and omissions; and (d) the Defective Products did not have the characteristics, benefits, or quantities as promised.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Class(es), pray for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representatives, and undersigned counsel to continue to act as Class Counsel on the putative Class's behalf;

B. Directing that Defendant bear the costs of any notice sent to the Class(es);

C. Awarding Plaintiff and Class members compensatory, statutory, actual, and/or monetary damages, including interest, in an amount to be determined at trial;

D. Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Pressure Cooker;

E. Awarding restitution and other appropriate equitable relief;

F. Granting an injunction against Defendant to (1) enjoin it from continuing to engage in the unlawful, unfair, and fraudulent acts or practices set forth herein; (2) require it to recall all Pressure Cookers still in circulation; and (3) require it to provide a truly effective remedy for all affected consumers;

G. Granting an Order requiring Defendant to fully and adequately disclose the Defect associated with the Pressure Cooker to anyone who may still be at risk of buying and using said product, along with corrective advertising to remedy past misrepresentations;

H. Ordering a jury trial and damages according to proof;

I. Awarding attorneys' fees, expenses, and litigation costs to Plaintiff and members of the Class(es) pursuant to California Civil Code § 1780. and/or the common fund doctrine;

J. Awarding pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

K. Awarding punitive damages where permitted by statute, in an amount to be determined at trial, due to Defendant's willful, wanton, and reckless disregard for the safety of consumers despite its knowledge of the Hazard; and

L. Ordering such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demand a trial by jury of all claims in this Complaint so triable.

Dated: May 9, 2025

Respectfully Submitted,

**SIRI | GLIMSTAD**

By: *<u>/s/ Chrsitina Xenides</u>*
Christina Xenides
Lisa R. Considine (*pro hac vice* forthcoming)
Mason A. Barney (*pro hac vice* forthcoming)
745 Fifth Ave, Suite 500
New York, NY 10151

Telephone: 212-532-1091
Facsimile: 646-417-5967
Email : cxenides@sirillp.com
Email: lconsidine@sirillp.com
Email: mbarney@sirillp.com

**LAUKAITIS LAW LLC**

*/s/ Kevin Laukaitis*
Kevin Laukaitis (*pro hac vice* forthcoming)
Daniel Tomascik (*pro hac vice* forthcoming)
954 Avenida Ponce DeLeon
Suite 205 - #10518
San Juan, PR 00907
Phone: (215) 789-4462
Email: klaukaitis@laukaitislaw.com
dtomascik@laukaitislaw.com

***Attorneys for Plaintiff and the Proposed Classes***